UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COREY R. PALM, | : | |
| Plaintiff | : | No. 4:10-CV-02176 |
| vs. | : | (Judge Caldwell) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant | : | |

## MEMORANDUM AND ORDER

### BACKGROUND

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Corey R. Palm's claim for social security supplemental security income benefits.  For the reasons set forth below we will remand the case to the Commissioner for further proceedings.

Supplemental security income (SSI) is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind or other disabled individuals who have little or no income.

Palm was born in the United States on February 15, 1971. Tr. 20, 63 and 113.[1] Palm has a limited education. Tr. 20 and 34.  He withdrew from school after completing the 10th grade. Id.  At the administrative hearing in this case Palm testified that he took General Equivalency Diploma (GED) classes but was unsure if he obtained a GED. Tr. 34-35 and 309.[2]

---

1.  References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on January 3, 2011.

2.  It was stated in a psychiatric evaluation of Palm by Edward H. Coronado, M.D., dated December 15, 2008, that Palm did not obtain a GED. Tr. 438.

Palm has past relevant unskilled, medium work experience as a warehouse laborer. Tr. 59. Palm last worked in December, 2007. Tr. 149.[3] He claims that he is unable to work because of mental and physical impairments. Tr. 7-9, 16, 64 and 149. Palm identified mood disturbance, delusions, paranoia, depression, cognitive difficulties and posttraumatic stress disorder as his mental health impairments and neck and low back pain, headaches, impingement syndrome of the left shoulder with bursitis and neuropathy of the upper extremities as his physical impairments. Doc. 10, Plaintiff's Brief, pp. 2 and 6.

On April 28, 2008, Palm protectively filed the application for supplemental security income benefits. Tr. 14, 63 and 113-117.[4] Palm in his application for SSI benefits alleged that he became disabled on June 15, 2006.[5] Tr. 113 and 149. Palm's alleged disability onset date, has no impact on Palm's application for supplemental security income benefits because supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." See C.F.R. § 416.501. Consequently, Palm is not eligible for SSI benefits for any period prior to May 1, 2008.

---

3. Palm's last employment was as an "order selector" at a grocery store. Tr. 174. In 2007 he also worked as a dishwasher. Id.

4. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

5. It is not clear why Palm picked that date. The administrative record does reveal that on or about July 10, 2006, Palm was involved in a motor vehicle accident where he allegedly suffered an injury to his head. Tr. 392-393.

On November 6, 2008, the Bureau of Disability Determination[6] denied Palm's application for SSI. Tr. 14 and 64-68. On November 28, 2008, Palm requested a hearing before an administrative law judge. Tr. 14, 71 and 109. After approximately 12½ months had passed, a hearing was held on December 14, 2009, before an administrative law judge. Tr. 26-62. On January 11, 2010, the administrative law judge issued a decision denying Palm's application for SSI benefits. Tr. 14-21. On February 3, 2010, Palm filed a request for review of the decision with the Appeals Council of the Social Security Administration. Tr. 6-10. On September 3, 2010, the Appeals Council concluded that there was no basis upon which to grant Palm's request for review. Tr. 1-5. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On October 22, 2010, Palm filed a complaint in this court requesting that we reverse the decision of the Commissioner denying him supplemental security income benefits. The Commissioner filed an answer to the complaint and a copy of the administrative record on January 3, 2011. Palm filed his brief on March 16, 2011, and the Commissioner filed his brief on April 15, 2011. The appeal[7] became ripe for disposition on April 22, 2011, when Palm filed a reply brief.

**Standard of Review**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec.

---

6. The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for SSI benefits on behalf of the Social Security Administration. Tr. 65.

7. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims. See 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[8] (2) has an impairment that is severe or a combination of impairments that is severe,[9] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[10] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.

---

8.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 416.910.

9.  The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two.  Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 416.923 and 416.945(a)(2).

10.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled.  If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Discussion**

The administrative record which primarily consists of medical records is 490 pages in length and we have thoroughly reviewed that record.  That record contains statements and testimony elucidating Palm's functional abilities from physicians, psychiatrists and psychologists, and a friend, Yvonne Dade.  Tr. 50-57, 307-310, 437-439.  The records also reveal that Palm was treated for psychiatric problems and for several physical ailments.

In October, 2008, Palm was examined by Louis Laguna, Ph.D., a licensed psychologist, on behalf of the Bureau of Disability Determination. Tr. 307-310.  Dr. Laguna noted that Palm "appeared to have some significant cognitive processing difficulties" which "had a significant impact on his insight and, consequently, on his understanding of the purpose of the interview.  That is, the claimant did very little to support his ongoing problems and, instead, seemed to believe everything was fine although this was clearly not the case." Tr. 307-308.  Dr. Laguna further noted that Palm "present[ed] as an individual with low self esteem.  It appeared as though he wanted to be cooperative but he had significant impairment and . . . was quite apathetic and uninvolved . . . With regard to thought processes, his productivity and continuity were both impaired." Tr. 309.  Dr. Laguna's "assessment revealed that [Palm's] recent, recent

past, and remote memory were clearly impaired" and that Palm's "[j]udgment is poor" and his "[i]nsight is poor as well." Tr. 310. Dr. Laguna concluded that Palm suffered from a cognitive disorder, not otherwise specified, and chronic pain and migraine headaches, and gave Palm a Global Assessment of Functioning (GAF) score of 45.[11]  Id.  Dr. Laguna further stated that Palm's prognosis was "certainly guarded" and that Palm "presents a complex case that appears to be best understood as a cognitive disorder that was probably prompted by his closed head injury in 1990 and perhaps exacerbated by his re-injury in 2006" and he has "little to no insight regarding the degree to which his impairment is impacting his day to day activities. Id.

On November 4, 2008, John Gavazzi, Psy,D., a non-treating and non-examining psychologist, reviewed the medical records on behalf of the Bureau of Disability Determination as of that date (including Dr. Laguna's report) and concluded that Palm was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." Tr. 313.

A treating psychiatrist, Edward H. Coronado, M.D., in December, 2008, found that Palm suffered from a "Mood Disorder secondary to medical condition (probably two car accidents)" and gave Palm a GAF score of 45.  Tr. 439.  In January, March, April, June and October, 2009, Dr. Coronado found that Palm was suffering from

---

11. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id.  A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id.

a blunted affect and delusions. Tr. 431 and 433-436.  Dr. Coronado treated Palm with the drug Geodon.[12] Tr. 430 and 439.

Palm was also treated by Richard Prensner, M.D., his primary care physician. Tr. 269-281 and 440-456.  Dr. Prensner concluded that Palm suffered from neuropathy of the upper extremities, impingement syndrome of the left shoulder, high blood pressure, headaches, chronic neck and low back pain, obesity, traumatic brain injury, insomnia, posttraumatic stress disorder and depression.  Id.  Dr. Prensner provided statements that Palm was unable to work since January 27, 2009.  Tr. 416-418.

In May, 2009, Palm had an electromyography (EMG) which revealed that he suffered from "early [bilateral] carpal tunnel syndrome[.]" Tr. 419 and 428.

At the administrative hearing held in this case on December 14, 2009, Ms. Dade, testified regarding Palm's' difficulties, including his problems with (1) concentration and memory and (2) following directions relating to simple chores around the house.  Tr. 51-57.  She further testified that Palm would have episodes of "blank outs." Tr. 52. Ms. Dade also corroborated Palm's complaints of chronic pain. Id.

The administrative law judge went through each step of the sequential evaluation process and (1) found that Palm had not engaged in substantial gainful activity since April 28, 2008, the application date; (2) found that Palm had a severe

---

12. "Geodon (ziprasidone) is an antipsychotic medication . . . used to treat schizophrenia and the manic symptoms of bipolar disorder (manic depression) in adults and children who are at least 10 years old." Geodon, Drugs.com, http://www.drugs.com/geodon.html (Last accessed November 25, 2011).

cognitive disorder; (3) found that Palm had the non-severe[13] "impairments of cervical strain and thoracolumbar strain;" (4) found that Palm's impairments did not meet or equal a listed impairment; (5) found that Palm lacked credibility; (6) rejected the opinions of Dr. Laguna, Dr. Coronado and Dr. Prensner and (7) concluded that Palm could not perform his past relevant work but that he could perform a limited range of light work. Tr. 18. Specifically, the administrative law judge stated that Palm could engage in full-time light work as defined in the regulations

> except he should never be required to understand, remember and carry out more than simple instructions. Due to his impaired concentration, the claimant is limited to jobs which require supervisory oversight. Additionally, the claimant is precluded from jobs that would require independent judgment.

Id. At the administrative hearing, the administrative law judge asked the vocational expert to consider an individual with the above residual functional capacity and Palm's work background. He further asked the vocational expert to consider an individual who had obtained a GED.

---

13. An impairment is "severe" if it significantly limits an individuals ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

In response to the administrative law judge's questions, the vocational expert identified occupations as a conveyor line bakery worker[14] with 380 positions available in the region and 58,000 in the national economy, a press feeder[15] with 305 available in the region and 42,900 in the national economy, and a bottling line attendant[16]

---

14. The vocational expert specified the Dictionary of Occupational Titles (DOT) number for each position. The conveyor line bakery worker position's DOT number is 524.687-022 and is described as follows: "Performs any combination of following tasks in preparation of cakes along conveyor line: Reads production schedule or receives instructions regarding bakery products that require filling and icing. Inspects cakes moving along conveyor to detect defects and removes defective cakes from conveyor to reject bins. Positions cakes on conveyor for application of filling or icing by machine, observes filling or icing application to ensure uniform coverage, and places additional cake layers on coated layers, depending on number of cake layers in product. Observes cakes moving under automatic topping shaker and cake cutting machine to ensure uniform topping application and cutting. Smooths iced edges of cake, using spatula, and moves decorating tool over top of designated cakes to apply specified appearance. Notifies supervisor of malfunctions." Dictionary of Occupational Titles (4th Ed., Rev. 1991), United States Department of Labor, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT05C.HTM (Last accessed November 25, 2011).

15. The press feeder position's DOT number is 583.686-030 and is described as follows: "Positions cloth or knitted garments on belt conveyor of machine that presses garments through heated rollers to smooth out wrinkles, dry, or preshrink articles. May inspect one side of garment to detect holes and lay defective garment on table for MENDER, KNIT GOODS (garment; knitting)." Dictionary of Occupational Titles (4th Ed., Rev. 1991), United States Department of Labor, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT05H.HTM (Last accessed November 25, 2011).

16. The bottling line attendant position's DOT number is 920.687-042 and is described as follows: "Prepares filled whiskey bottles for packing and shipping, performing any combination of following duties: Pastes labels and tax stamps on filled whiskey bottles as bottles pass on conveyor. Examines bottles to ascertain that labels and stamps have been correctly applied. Straightens labels and stamps on bottles. Presses stamps on necks of bottles. Wipes excess glue and moisture from bottles. Packs whiskey bottles in cartons. Pastes indentification labels on cartons. May be known according to task performed as Bottle-Label Inspector (beverage); Stamp Presser (beverage); Strip-Stamp Straightener (beverage)." Dictionary of Occupational Titles (4th Ed., Rev. 1991), United States Department of Labor, http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT09A.HTM (Last accessed November 25, 2011).

with 320 available in the region and 39,900 in the national economy. Tr. 20.  Based on that testimony, the administrative law judge found that Palm was not disabled because he could perform those three jobs, and that there were a significant number of such jobs in the regional and national economies. Tr. 21. In so finding, the administrative law judge purportedly relied on the opinion of John Gavazzi, Psy,D., the non-treating and non-examining psychologist.

Palm  makes two arguments in support of his request that the decision of the administrative law judge be reversed and that the case be remanded for an award of benefits, or alternatively, for further administrative proceedings.  Palm argues that (1) the administrative law judge did not evaluate relevant non-medical evidence which supported Palm's disability claim; and (2) the administrative law judge did not evaluate properly the assessments by Dr. Laguna, Dr. Coronado and Dr. Prensner.  We find substantial merit in Palm's arguments.

Palm argues that the administrative law judge did not appropriately consider the testimony of Ms. Dade, the friend of Palm.  It is legal error for an administrative law judge to fail to consider third-party statements or testimony regarding the functional abilities of a claimant.  Burnett v. Comm'r of SSA, 220 F.3d 112, 122 (3d Cir. 2000); Bunch v. Astrue, Civil Action No. 10-1921, slip op. *15 (M.D.Pa. filed Nov.21, 2011)(Nealon, J.); Oldenburgh v. Astrue, 2009 U.S. Dist. LEXIS 24867 * 26 (M.D. Pa. March 26, 2009)(Muir, J.).  The Social Security regulations and rulings recognize the relevance of statements from family members and others who know a claimant. See 20 C.F.R. §§ 416.912, 416.913 and 416.929; SSR 96-7p and 96-8p.  Such statements can shed light on a claimant's impairments, limitations, symptoms, functioning and credibility.

12

Id. This court has on several occasions remanded cases for further proceedings because of an administrative law judge's failure to address statements of third-parties who had contact with and observed an applicant for disability benefits. When an administrative law judge fails to acknowledge and comment on unfavorable evidence the reviewing district court cannot ascertain if the administrative law judge considered it appropriately. We cannot determine if the administrative law judge appropriately considered the testimony of Ms. Dade.

Palm also argues that the administrative law judge did not appropriately consider the opinions of Dr. Laguna, Dr. Coronado and Dr. Prensner. Dr. Coronado and Prensner are treating physicians. The preference for the treating physician's opinion has been recognized by the Court of Appeals for the Third Circuit and by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the administrative law judge may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Id. In choosing to reject the evaluation of a treating physician, an administrative law judge may not make speculative inferences from medical reports and may reject treating physician's opinions outright only on the basis of contradictory medical evidence. Id. An administrative law judge may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion. Id. An administrative law judge may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the

record and from his evaluation of the [claimant]'s credibility." Id.  As one court has stated, "Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir 1990).

In this case the administrative law judge relied on the opinion of a non-treating, non-examining physician and his own lay analysis of the medical records to reject the opinions of treating physicians.  The vocational expert in this case testified that an individual with a GAF score of 45 is considered unemployable.  Tr. 61.  Dr. Coronado gave Palm a GAF score of 45.  Dr. Prensner also concluded that Palm was unemployable.  The administrative law judge rejected those opinions as well as Dr. Laguna (who also assessed Palm with a GAF score of 45) and relied on the opinion of Dr. Gavazzi who only reviewed the medical records as of November 4, 2008.  After that date Palm received treatment from Dr. Coronado and Dr. Prensner.  The administrative law judge did not give an adequate reason for rejecting the opinions of Dr. Laguna, Dr. Coronado and Dr. Prensner.

In addition to the above errors, the administrative law judge erred at steps 2 and 5 of the sequential evaluation process.

At step two, the administrative law judge found that Palm suffered from a severe cognitive disorder. The administrative record, however, reveals that after the non-treating, non-examining state agency physician rendered an opinion, Palm was diagnosed with several other conditions, including bilateral carpal tunnel syndrome, obesity, high blood pressure, insomnia, a mood disorder, posttraumatic stress disorder

14

and depression, and the administrative law judge did not make a determination as to whether or not those conditions were medically determinable impairments.

The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c).  If a claimant has no impairment or combination of impairments which significantly limit the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 404.1520(d)-(g).  A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two. However, all of the medically determinable impairments both severe and non-severe must be considered at step four when setting the residual functional capacity.  The social security regulations mandate such consideration and this court has repeatedly so indicated. See, e.g., Christenson v. Astrue, Civil No. 10-1192, slip op. at 12 (M.D. Pa. May 18, 2011)(Muir, J.); Tuttle v. Astrue, Civil No. 10-1392, slip op. at 45-46 (M.D. Pa. September. 7, 2011)(Rambo, J.); Crayton v. Astrue, Civil No. 10-1265, slip op. at 33-34 (M.D. Pa. September 30, 2011)(Caputo, J.);[17] 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2).

---

17. The Social Security Administration has a policy of nonacquiescence, i.e., the policy of not following precedents set by both District Courts and Courts of Appeals other than with respect to the claimant named in a particular decision.  See Office of Hearings and Appeals Handbook, § 1-161, quoted in Stieberger v. Heckler, 615 F.Supp. 1315 (S.D. N.Y. 1985), vacated, 801 f.2d 29 (2d Cir. 1986)("[W]here a district court or circuit court[']s decision contains interpretations of the law, regulations, or rulings [that] are inconsistent with the Secretary's interpretations, the [administrative law judges] should not consider such decisions binding on future cases simply because the case is not appealed.").

The record suggests that Palm suffered from several conditions in addition to the condition found as severe by the administrative law judge. The failure of the administrative law judge to find the above noted conditions as medically determinable impairments, or to give an adequate explanation for discounting them, makes his decisions at steps two and four of the sequential evaluation process defective.

The error at step two of the sequential evaluation process, draws into question the administrative law judge's residual functional capacity determination and assessment of the credibility of Palm.  The administrative law judge found that Palm's medically determinable impairments of a cognitive disorder, cervical strain and thoracolumbar strain could reasonably cause Palm's alleged symptoms but that Palm's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible.  This determination by the administrative law judge was based on an incomplete analysis of all of Palm's medically determinable impairments and reliance on the opinion of non-treating, non-examining state agency physician who did not review all the medical records.

The administrative law judge's decision at step 5 of the sequential evaluation process is defective because the answers given by the vocational expert regarding the available jobs were based on a hypothetical question which assumed that Palm had at least the equivalent of a high school education, i.e., Palm had obtained a GED.  The record, however, indicates that Palm had a limited 10th grade education and, in fact, the administrative law judge so found in his decision. Tr. 20.

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence.  We will, therefore, pursuant to

42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings.

An appropriate order will be entered.

    /s/ William W. Caldwell
WILLIAM W. CALDWELL
United States District Judge

Dated: November 29, 2011

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COREY R. PALM, | : |
| Plaintiff | : No. 4:10-CV-02176 |
| vs. | : (Judge Caldwell) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : |
| Defendant | : |

## ORDER

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. The Clerk of Court shall enter judgment in favor of Corey R. Palm and against Michael J. Astrue, Commissioner of Social Security, as set forth in the following paragraph.

2. The decision of the Commissioner of Social Security denying Corey R. Palm supplemental security income benefits is vacated and the case remanded to the Commissioner of Social Security to:

2.1 Conduct a new administrative hearing and appropriately evaluate the medical and vocational evidence, the credibility of Corey R. Palm, and the third-party testimony in accordance with the background of this order.

      3.  The Clerk of Court shall close this case.


                                                /s/ William W. Caldwell  
                                               WILLIAM W. CALDWELL  
                                               United States District Judge

Dated: November 29, 2011